**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STERNE KESSLER GOLDSTEIN & FOX, PLLC,<br><br>Petitioner,<br><br>v.<br><br>EASTMAN KODAK COMPANY,<br><br>Respondent. | Miscellaneous Case No. 11-337 (BAH)<br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Before the Court is petitioner Sterne, Kessler, Goldstein & Fox P.L.L.C.'s (hereinafter "the petitioner") motion to quash a deposition subpoena served upon it by Eastman Kodak Company (hereinafter "Kodak" or "the respondent"). Kodak seeks to depose the petitioner in connection with a patent infringement action proceeding in the Western District of New York brought by Kodak against Apple, Inc. (hereinafter "Apple"). The petitioner previously provided representation to Apple before the U.S. Patent and Trademark Office (hereinafter "USPTO") during reexamination of Apple's U.S. Patent No. 5,634,074 (hereinafter "074 patent"), one of the patents at issue in the New York litigation. The petitioner now moves to quash the Kodak subpoena on grounds that the deposition will "necessarily touch on information protected by attorney-client privilege and the work-product doctrine" and "[t]his potential intrusion into protected information can and should be avoided." Pet'r Mot. Quash, ECF No. 1, at 1. The Court concludes that deposition of the petitioner is not warranted and therefore grants the petitioner's motion to quash the respondent's subpoena.

1

## I.    BACKGROUND

On January 14, 2010, Kodak filed a Complaint in the Western District of New York

alleging that Apple had infringed three of its patents (hereinafter the "Kodak-Apple litigation").

*Eastman Kodak v. Apple, Inc.*, No. 6:10-cv-6022 (W.D.N.Y. filed Jan. 14, 2010).  Apple

counterclaimed, alleging, *inter alia*, that Kodak infringed on Apple's 074 patent.  Pet'r Mot.

Quash, ECF No. 1, at 1; *Eastman Kodak v. Apple, Inc.*, No. 6:10-cv-6022 (W.D.N.Y. filed Jan.

14, 2010), Amended Answer, ECF No. 21 (Apr. 15, 2010), ¶¶ 51-57.

Several months after initiation of the Kodak-Apple litigation, on April 28, 2010, "an

anonymous third-party" requested the USPTO to conduct an *ex parte* reexamination of the 074

patent.  Pet'r Mot. Quash, ECF No. 1, at 1.  The USPTO granted this request, and Apple retained

the petitioner to represent it during the reexamination process. *Id.*  The USPTO ultimately

determined that all claims of the 074 patent were patentable, and issued a reexamination

certificate on May 31, 2011.  *Id.* at 2.  The petitioner states that the "entire prosecution for the

reexamination of the 074 patent is contained in the written prosecution file," or the "file

wrapper," which includes "summaries, submitted by the Examiner and Apple, of the in-person

interview that [the petitioner] conducted on January 5, 2011." *Id.*

Before the USPTO had concluded its reexamination of the 074 patent, on April 14, 2011,

Kodak sought leave to file a Second Amended Answer in the Kodak-Apple litigation in order to

add an inequitable conduct defense based "on a continued course of conduct related to the

recently concluded 074 patent reexamination."[1] *Eastman Kodak v. Apple, Inc.*, No. 6:10-cv-6022

---

[1] Kodak filed its Motion for Leave to File a Second Amended Answer on April 14, 2011.  *Eastman Kodak v. Apple, Inc.*, No. 6:10-cv-6022 (W.D.N.Y. filed Jan. 14, 2010), Kodak's Mot. Leave File Second Amended Answer and Counterclaims, ECF No. 49 (Apr. 14, 2011).  A hearing on this motion in the Western District of New York was scheduled for July 25, 2011.  As of the date of this opinion, no decision on Kodak's motion to add an inequitable conduct defense has been issued.  Regardless of the outcome of its motion, Kodak has stated that it seeks to depose the petitioner.  Resp't Opp'n Mot. Quash, ECF No. 5, at 8 n.2. If Kodak does not obtain leave to add an inequitable conduct defense, it will not depose the petitioner on issues relating to the petitioner's alleged inequitable-conduct,

2

(W.D.N.Y. filed Jan. 14, 2010), Kodak's Mot. Leave File Second Amended Answer and Counterclaims, ECF No. 49 (Apr. 14, 2011); Pet'r Mot. Quash, ECF No. 1, Ex. 6.  This proposed new defense to Apple's counterclaim contends that the "074 patent is unenforceable due to inequitable conduct committed by Apple, an inventor of the 074 patent, and/or its attorneys during reexamination of the 074 patent." *Eastman Kodak v. Apple, Inc.*, No. 6:10-cv-6022 (W.D.N.Y.), Kodak's Mot. Leave File Second Amended Answer and Counterclaims, ECF No. 49, Ex. 1, Proposed Second Am. Compl., Eighth Affirmative Defense.  Specifically, Kodak alleges that during the USPTO's reexamination of the 074 patent, Apple and its attorneys failed to disclose to the Patent Office both the existence of the Kodak-Apple litigation and "the prior art references Kodak identified in its initial invalidity contention" in the same lawsuit. *Id.* ¶ 94.

On May 12, 2011, Kodak served the petitioner, which is not Apple's counsel in the Kodak-Apple litigation, with a subpoena for production of documents and a deposition,[2] seeking information, *inter alia,* on (1) the petitioner's analysis of the issues involved in the reexamination of the 074 patent (Topics 5, 19); (2) the prosecution of the 074 patent, including its reexamination (Topics 1, 6-10); (3) the petitioner's communications with Apple, other attorneys who prosecuted the 074 patent, and the USPTO (Topics 2-4, 11); (4) the petitioner's knowledge of the Kodak-Apple litigation and other litigation concerning the 074 patent (Topics 12-17); and (5) the petitioner's understanding of reexamination practice before the USPTO (Topics 20-23). Pet'r Mot. Quash, ECF No. 1, Ex. 1, Kodak's Notice of Subpoena Ad Testificandum and Subpoena Duces Tecum to the Petitioner, Schedule A: Topics of Deposition.

---

but still intends to depose the petitioner on issues concerning "claim construction/claim scope." Pet'r Mot. Quash, Ex. 2, Email from B. Weed to B. Pickard (May 27, 2011).

[2] Pursuant to Federal Rule of Civil Procedure 45(a)(2), this subpoena was issued by the United States District Court for the District of Columbia. FED. R. CIV. P. 45(a)(2)(B) (stating that a subpoena for attendance at a deposition must issue "from the court for the district where the deposition is to be taken.").

The petitioner objected to the respondent's subpoena concerning the documentary

portions of the subpoena and also advised the respondent that it believed the deposition subpoena

was not proper because "any questions concerning [the petitioner's representation of Apple in

the USPTO reexamination of the 074 patent] will necessarily touch on matters that

are protected from disclosure by the attorney-client privilege and the attorney-work product

doctrine." Pet'r Mot. Quash, Ex. 7, Letter from B. Pickard to B. Weed dated May 25, 2011, at 2.

On June 10, 2011, the petitioner filed a motion to quash the deposition subpoena in this Court,[3]

pursuant to Federal Rule of Civil Procedures 26(b) and (c), which requires the Court to limit

discovery when it is unreasonably cumulative, or can be obtained from other more convenient,

less burdensome, or less expensive sources.[4]

The instant motion became ripe when the petitioner filed its Reply brief on July 5, 2011,

which was five days after discovery closed in the Kodak-Apple litigation. Due to the June 30,

2011 discovery cut-off date, the respondent urged the Court to resolve this motion on an

"expedited basis." Resp't Opp'n Mot. Quash, ECF No. 5, at 5. Yet, at the same time, the

respondent granted the petitioner a seven-day extension to file the instant motion, and then filed

its opposition a full fourteen days after the motion was filed, on June 24, 2011, pushing the

petitioner's reply due date to after the close of discovery. On July 26, 2011, the Court directed

the parties to submit a joint report addressing "whether the petitioner's pending motion to quash

is moot given that, to the Court's knowledge, discovery in the underlying litigation closed on

June 30, 2011." Minute Order dated July 26, 2011 (Howell, J.). The parties responded, on

August 3, 2011, stating that they believe the motion to quash is not moot because (1) it was

---

[3] Under Federal Rule of Civil Procedure 45(c), a motion to quash must be filed with the Court issuing the subpoena.

[4] Federal Rules of Civil Procedure 26(b) and (c) respectively authorize the Court to limit discovery and issue protective orders. The petitioners seek to quash a deposition subpoena, which is provided for under Federal Rule of Civil Procedure 45(c).

4

served and was returnable prior to the discovery cut-off date, and (2) it was "expected" that the district court in the underlying case will "extend the discovery period for discovery relevant to newly added issues if any amendment is allowed to Kodak's Answer and Counterclaims." Joint Report Regarding Status of Motion, ECF No. 9, at 2.

Having considered the briefs submitted in support and in opposition to this motion, the Court concludes that deposition of the petitioner is not warranted and therefore grants the petitioner's motion to quash.

## II.     STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a party is entitled to discover any information that appears "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).  Parties may obtain discovery, including through oral depositions, "regarding any nonprivileged matter, that is relevant to any party's claim or defense."  *Id.* Limiting discovery and quashing subpoenas "goes against courts' general preference for a broad scope of discovery." *North Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005) (internal citations omitted).  The Court must limit discovery, however, if (1) the discovery sought is unreasonably cumulative or duplicative, or obtainable from a less expensive or more convenient source; (2) the party seeking the discovery has had ample opportunity to obtain the sought information by earlier discovery; or (3) the burden or expense of the discovery outweighs its benefit. FED. R. CIV. P. 26(b)(2)(C).  The individual or entity seeking relief from subpoena compliance bears the burden of demonstrating that a subpoena should be modified or quashed. *See Linder v. Dep't of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998); *In re Micron Tech. Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010).

## III. DISCUSSION

The petitioner moves to quash Kodak's subpoena on grounds that the deposition sought is "neither appropriate nor necessary" and "[d]eposing an opposing party's attorney is disfavored." Pet'r Mot. Quash, ECF No. 1, at 5. It urges the Court to apply the three-part test articulated by the Eighth Circuit in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), which limited the deposition of opposing counsel "to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information other than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.* at 1327 (internal citations omitted); *see also Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009) (recognizing that the *Shelton* standard shifts the burden of proof to the party seeking to depose opposing counsel). The Court of Appeals for the D.C. Circuit has not adopted the *Shelton* test, but other judges on this court have applied this test to bar requests to depose opposing counsel. *See Corp. for Pub. Broad. v. Am. Auto. Centennial Comm'n*, No. 97-cv-1810, 1999 WL 1815561, at *1 (D.D.C. Feb. 2, 1999). The Court finds that *Shelton* does not apply to the instant situation. Nevertheless, the Court concludes that Kodak's subpoena should be quashed because the discovery Kodak seeks may be obtained from other more appropriate sources, and any benefit from deposing the petitioner is outweighed by the burdens it will impose. *See* FED. R. CIV. P. 26(b)(2)(C).

### A. The *Shelton* Factors Do Not Apply In The Instant Case

The petitioner argues that the Court should quash Kodak's subpoena because the respondent cannot demonstrate that deposing the petitioner is appropriate under the *Shelton* three-part test. The *Shelton* test, however, is limited to circumstances in which the proposed deponent is serving as the opposing party's trial or litigation counsel, and does not apply here.

6

In *Shelton*, the plaintiffs subpoenaed defendants' in-house attorney, who was "assigned specifically" to supervise the litigation and refused to answer questions concerning the existence or nonexistence of certain documents that would be pertinent to the plaintiffs' underlying products liability case. 805 F.2d at 1325. While the district court concluded that the defendants' attorney had no basis to withhold information, the Eighth Circuit reversed, holding that the deposition of opposing counsel, who was not the trial counsel but intimately involved in the litigation as in-house counsel, was inappropriate when the attorney's testimony regarding the existence of certain documents would "reflect her judgment as an attorney in identifying, examining, and selecting from [the defendants'] voluminous files those documents on which she [would] rely in preparing her client's defense in this case." *Id.* at 1328. The court reasoned that requiring opposing counsel to testify regarding the existence of certain documents would be tantamount to requiring her to "reveal her legal theories and opinions concerning that issue" and would thus impermissibly reveal attorney work-product. *Id.* The Eighth Circuit expressly declined to grant absolute immunity to "opposing trial counsel" from being deposed, but set forth the three stringent requirements noted above that circumscribed the limited circumstances when such a deposition should be allowed. *Id.* at 1327.

Courts have declined to apply *Shelton* when the proposed deponent is (1) not trial and/or litigation counsel, and (2) when such questioning would not expose litigation strategy in the pending case. *United States v. Philip Morris, Inc.*, 209 F.R.D. 13, 17 (D.D.C. 2002) (concluding that the *Shelton* factors did not apply when the proposed deponent attorneys were not litigation or trial counsel, the deponent attorneys were assigned non-litigation responsibilities, and the proposed deposition would not cover litigation strategies related to the case). The Eighth Circuit itself limited the applicability of *Shelton*, stating that "[t]he *Shelton* test was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to

the disclosure of the attorney's litigation strategy." *Padima, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002).

In this case, the petitioner served as Apple's counsel in the USPTO's now-completed reexamination of the 074 patent, and the petitioner is neither serving as Apple's trial counsel in the underlying Kodak-Apple litigation, nor providing support to that litigation in any manner that has been disclosed to the Court. Apple is represented by a different law firm in the Kodak-Apple litigation, and thus, application of the *Shelton* test to the instant situation would be a stretch beyond the recognized reach of that test. *See also Philip Morris*, 209 F.R.D. at 16 (To apply *Shelton* "to any attempt to depose an attorney, without regard to the subject matter of the deposition or the attorney's role in the pending litigation . . . is not only a misinterpretation of the holding in *Shelton* and the subsequent case law re-affirming that holding, but is contrary to the language and philosophy of the Federal Rules of Civil Procedure.").

## B. Deposition Of The Petitioner Is Not Appropriate Under The Federal Rules of Civil Procedure

Although the *Shelton* test is inapplicable to the instant facts, the Court nonetheless finds to be inappropriate the deposition sought here of former counsel concerning that counsel's representation of a party during reexamination of the same patent concurrently at issue in a pending patent infringement action against the same party. Some of the same concerns that animated the *Shelton* test regarding the risks to and burdens on the attorney-client privilege and work-product doctrine are implicated when the proposed deponent is former counsel to a party in pending litigation on matters that are plainly at issue in that litigation, even when the proposed deponent is not currently opposing trial counsel.

The Federal Rules of Civil Procedure do not expressly prohibit deposition of opposing counsel. *See* FED. R. CIV. P. 30(a) (a party may take the deposition of "any person"). The

practice of deposing opposing counsel, however, is generally disfavored in federal courts. *Guantanamera Cigar Co.*, 263 F.R.D. at 8 (citing *Hickman v. Taylor*, 329 U.S. 495, 513 (1947)); *see also Shelton*, 805 F.2d at 1327 (stating that deposition of opposing counsel is "a negative development in the area of litigation . . . that should be employed only in limited circumstances."); *Corp. for Pub. Broad.*, 1999 WL 1815561, at *1-2 (granting protective order and denying plaintiffs' request to depose in-house counsel responsible for negotiating contract at issue in the litigation).

Courts confronted by demands for counsel depositions have noted a number of concerns that such discovery poses. Allowing depositions of opposing counsel, even if these depositions were limited to relevant and non-privileged information, may disrupt the effective operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients. *See United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97-cv-6124, 2000 U.S. Dist. LEXIS 12669, at *9-10 (S.D.N.Y. Aug. 31, 2000) ("[d]epositions of counsel, even if limited to relevant and non-privileged information, are likely to have a disruptive effect on the attorney-client relationship and on the litigation of the case," citing *Roznitsky*, *Schwartz Cobb & Scheinert*, No. 98-cv-6643, 1999 U.S. Dist. LEXIS 4449, at *5 (S.D.N.Y. Apr. 6, 1999)). Undermining attorney-client communications due to the risk that counsel may be compelled to testify at a deposition in a pending or future "scorched earth" litigation is certainly not helpful to effective legal practice. *See Hickman*, 329 U.S. at 510-11 ("[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of

9

jurisprudence to promote justice and to protect their clients' interests."); *Wilson v. Scruggs,* No. 3:02-cv-525, 2003 WL 23521358, at *1 (S.D. Miss. Apr. 10, 2003) ("[D]epositions of opposing counsel . . . disrupt the adversarial process and lower the standards of the profession . . . . Thus, a party should not be permitted to take the deposition of another party's attorney except in the most unusual of circumstances.") (internal citations omitted); *Qad.inc v. ALN, Assoc., Inc.*, 132 F.R.D. 492, 494 (N.D. Ill. 1990) (declining to apply the *Shelton* test, but recognizing that "the taking of a lawyer's deposition poses the potential for invasion of client confidences and secrets . . . and also for invasion of lawyer thought processes . . . ."). A second concern is that depositions of opposing counsel present a "unique opportunity for harassment." *Marco Island Partners v. Oak Dev. Corp.*, 117 F.R.D. 418, 420 (N.D. Ill. 1987); *see also Shelton,* 805 F.2d at 1330 ("The harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process."); *Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 630 (D. Kan. 2000) ("[E]xperience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters.") (internal citations omitted). Closely related to this second concern is that the time involved in preparing for and undergoing such depositions will disrupt counsels' preparation of parties' cases and thus decrease the overall quality of representation. *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003) ("Courts have been especially concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests, and have resisted the idea that lawyers should routinely be subject to broad discovery."); *Shelton*, 805 F.2d at 1327 (depositions of opposing counsel "not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the

already burdensome time and costs of litigation."); *Jennings v. Family Mgmt.*, 201 F.R.D. 272,

276-77 (D.D.C. 2001) ("[C]ourts regard attorney depositions unfavorably because they may

interfere with the attorney's case preparation and risk disqualification of counsel who may be

called as witness."); *Phillip Morris*, 209 F.R.D. at 17 (stating that *Shelton* "addressed a troubling

and real-world discovery problem"); *Evans v. Atwood,* No. 96-cv-2746, 1999 WL 1032811, at *2

(D.D.C. Sept. 29, 1999) ("[The] presumption against attorney depositions is that depositions of

counsel, even if limited to relevant and non-privileged information, are likely to have a

disruptive effect on the attorney-client relationship and on the litigation of the case.").  A third

concern, which is not pertinent here, is that such depositions may lead to the disqualification of

counsel who may be called as witnesses.  *See Marco Island*, 117 F.R.D. at 420; *Jennings*, 201

F.R.D. at 276-77.  Finally, chief among the concerns cited by federal courts, is that counsel

depositions carry the substantial potential of  spawning litigation over collateral issues related to

assertion of privilege, scope, and relevancy, that only end up imposing additional pretrial delays

and costs on both parties and burdens on the courts to resolve work-product and privilege

objections.  *See Shelton*, 805 F.2d at 1327 ("It is not hard to imagine additional pretrial delays to

resolve work-product and attorney-client objections, as well as delays to resolve collateral issues

raised by the attorney's testimony."); *M & R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305

(N.D. Ill. 1992) ("Deposing an opponent's attorney is a drastic measure. It not only creates a

side-show and diverts attention from the merits of the case, its use also has a strong potential for

abuse. Thus, a motion to depose an opponent's attorney is viewed with a jaundiced eye and is

infrequently proper."); *Walker v. United Parcel Servs.*, 87 F.R.D. 360, 362 (E.D. Pa. 1980)

(denying leave to depose defendant's counsel and stating that the deposition would "occasion

significant [] delays" and "[f]urther controversies over privilege and work product claims would

inevitably require further imposition on the resources of the Court and provide the potential for undue delay.").

While the petitioner is not currently counsel to a party in the Kodak-Apple litigation for which the deposition is sought, the fact that the petitioner was involved in representing Apple while that litigation was pending, and on the patent matter at issue both before the USPTO and in that lawsuit, puts petitioner in a position somewhere in between the situation of opposing trial counsel, which would trigger the heightened *Shelton* test, and former counsel on a matter unrelated to the litigation, which would fall under the standard application of Federal Rules of Civil Procedure 26 and 45. The particular situation of the petitioner is certainly a circumstance that this Court must take into account in evaluating the factors under Rules 26 and 45(c) of the Federal Rules of Civil Procedure. *See Phillip Morris,* 209 F.R.D. at 18 (the subject matter of the deposition and the deponent's role in the pending case are relevant to the court's evaluation whether the counsel deposition should be permitted); *accord Nat'l Western Life Ins. Co. v. Western Nat'l Life Ins. Co.*, No. 09-cv-711, 2010 U.S. Dist. LEXIS 132024, at *10 (W.D. Tex. Dec. 13, 2010) ("[C]ourts have found that 'the critical factor in determining whether the *Shelton* test applies is not the status of the lawyer as trial counsel, but the extent of the lawyer's involvement in the pending litigation,'" quoting *Murphy v. Adelphia Recovery Trust*, No. 3:09-mc-105, 2009 U.S. Dist. LEXIS 122027, at *3 (N.D. Tex. Nov. 3, 2009)).

Federal Rule of Civil Procedure 26 requires the Court to limit discovery when the discovery can be obtained from "some other source that is more convenient, less burdensome, or less expensive," FED. R. CIV. P. 26(b)(2)(C)(i), or when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case . . . the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C)(iii). The Court must also quash a subpoena when the subpoena

"requires disclosure of privileged or other protected matter, if no exception or waiver applies."
FED. R. CIV. P. 45(c)(3)(A)(iii). When attorney depositions are sought, courts should also consider "all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *In re Friedman,* 350 F.3d at 72. These considerations include "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id.*

### 1. Kodak Has Not Demonstrated A Need To Depose The Petitioner

Kodak contends that the deposition of the petitioner is necessary because this testimony would be relevant to Kodak's inequitable conduct defense, and courts have generally permitted depositions of prior patent prosecution counsel in this situation. *See, e.g., Paragon Podiatry Lab. Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1193 (Fed. Cir. 1993) (citing patent attorney's deposition in affirming district court's decision that patent was invalid and therefore unenforceable); *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, No. 8:10-cv-187, 2011 WL 1467435, at *5-6 (D. Neb. Apr. 18, 2011) (depositions of patent prosecution counsel was permissible when the mental impressions and knowledge of such counsel was relevant to a claim of inequitable conduct.); *Plymouth Indus., LLC v. Sioux Steel Co.*, No. 8:05-cv-469, 2006 WL 695458, at *5 (D. Neb. Mar. 17, 2006) (granting the defendant's motion to compel deposition of patent prosecution counsel); *Genal Strap, Inc. v. Dar*, No. 2004-cv-1691, 2006 WL 525794, at *2 (E.D.N.Y. Mar. 3, 2006) ("[C]ourts have permitted the deposition of patent prosecution counsel who is also serving as trial counsel where the knowledge of counsel was pertinent to a defense raised of inequitable conduct. Those courts have recognized that the prosecuting attorney's mental impressions are crucial to any claim of inequitable conduct in a

patent infringement action.") (internal citations and quotations omitted); *Alcon Labs. Inc. v.*

*Pharmacia Corp.*, 225 F. Supp. 2d 340, 344-45 (S.D.N.Y. 2002) (finding that mental

impressions of patent prosecution counsel are "crucial" to any claim of inequitable conduct);

*Amicus Comms. v. Hewlett-Packard Co., Inc.*, No. 99-cv-0284, 1999 WL 33117227, at *2

(D.D.C. Dec. 3, 1999) (observing that "several courts have allowed the depositions of patent

prosecution counsel" when the attorney has played a role in the underlying facts). The instant

case has critical differences from the typical case where alleged inequitable conduct before the

USPTO is at issue.

First, no inequitable conduct defense is currently pled in the Kodak-Apple litigation.

Although Kodak has sought leave to amend its pleadings to assert that defense, the district court

has yet to allow Kodak to do so.[5]  Kodak cites *Exmark Manufacturing Co. v. Briggs & Stratton*

*Power Products Group, LLC*, No. 8:10-cv-187, 2011 WL 1467435 (D. Neb. Apr. 18, 2011), for

the contention that "discovery may proceed on inequitable conduct, even while a motion is

pending." Resp't Opp'n Mot. Quash, ECF No. 5, at 8.  In *Exmark,* however, the motion

referenced by the court is a motion to dismiss, not a motion for leave to amend pleadings. The

*Exmark* court clearly stated that until the motion to dismiss was decided, "[t]he fact is, [the

defendant's] inequitable conduct defense is properly before the court at this time." *Exmark,* 2011

WL 1467435, at *5.  In complete contrast, an inequitable conduct defense is not properly at issue

in the Apple-Kodak litigation. The Court will not sanction deposition of counsel in the

---

[5] The inequitable conduct defense has apparently become a common patent litigation strategy in recent years. As recently noted by the Federal Circuit, "[a] charge of inequitable conduct conveniently expands discovery into corporate practices before patent filing and disqualifies the prosecuting attorney from the patentee's litigation team. Moreover, inequitable conduct charges cast a dark cloud over the patent's validity and paint the patentee as a bad actor. Because the doctrine focuses on the moral turpitude of the patentee with ruinous consequences for the reputation of his patent attorney, it discourages settlement and deflects attention from the merits of validity and infringement issues. . . .  Inequitable conduct has been overplayed, is appearing in nearly every patent suit, and is cluttering up the patent system. . . . Left unfettered, the inequitable conduct doctrine has plagued not only the courts but also the entire patent system." *Therasense, Inc. v. Becton, Dickinson and Co.*, No. 2008-1511, 2011 WL 2028255, at *7-9 (Fed. Cir. 2011) (internal quotations and citations omitted).

petitioner's situation on the mere prospect of Kodak being granted leave to amend its pleadings. *See also ResQNet.com, Inc. v. Lansa, Inc.*, No. 01-cv-3578, 2004 WL 1627170, at \*5 (S.D.N.Y. July 21, 2004) (quashing subpoena to depose counsel for information relating to an inequitable conduct defense because the defendant had not properly asserted inequitable conduct in its pleadings). In this respect, the proposed discovery of the petitioner is not important – at least not yet – to "the issues at stake in the action." FED. R. CIV. P. 26(b)(2)(C)(iii).

Second, even if an inequitable conduct defense were properly pled, deposition of the petitioner is inappropriate. The cases in which courts have allowed deposition of patent prosecution counsel have done so because inequitable conduct was asserted during the patent holder's original patent application process or during USPTO proceedings that were completed before institution of the underlying litigation for which the deposition is sought. Here, an "anonymous third-party" urged the USPTO to reexamine the 074 patent shortly after commencement of the *Kodak v. Apple* litigation, and this reexamination proceeded concurrently with the litigation for which the deposition is sought. Although Kodak is correct that the petitioner's representation of Apple was limited to the reexamination, and the petitioner is not counsel of record in the Kodak-Apple matter, the procedural posture of the proposed deposition implicates some of the same concerns underlying *Shelton*. For example, by virtue of the petitioner's role defending before the USPTO the same patent at issue in the concurrently pending Kodak-Apple litigation, the petitioner was potentially privy to legal theories, thought processes and strategies underlying Apple's defense to the 074 patent in both fora. As discussed in more detail below, petitioner's role increases certain risks that the Federal Rules require courts to examine when evaluating requests for discovery.

### 2. Any Benefit Of The Proposed Deposition Is Outweighed By The Risk of Encountering Privilege and Work-Product Issues

A significant problem that *Shelton* sought to restrict was an effort to preview an opponent's litigation strategy simply by noticing the deposition of opposing counsel. Indeed, "counsel's tasks in preparing for trial would be much easier if he could dispense with interrogatories, document requests, and depositions of lay persons, and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy." *Shelton,* 805 F.2d at 1327. This is certainly a concern here where the Kodak-Apple litigation was ongoing during the petitioner's representation of Apple on an integrally related matter. According to Kodak, the deposition of the petitioner is intended to illuminate topics at issue in the Kodak-Apple litigation, but this is also likely to implicate the petitioner's communications with Apple, Apple's patent prosecution strategy, and discussions regarding the history and scope of the 074 patent. *See Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc.*, 237 F.R.D. 215, 220 (D. Neb. 2006) (quashing deposition subpoena issued to defendant's former general counsel even though he was "never litigation counsel" because "he was involved with the defense strategy and the litigation of this case and similar actions against the defendants" and "[t]he plaintiffs have failed to show that [he] has relevant, nonprivileged information."). "Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Hickman*, 329 U.S. at 516. The risk that the proposed deposition would be used to uncover aspects of Apple's strategy through deposition of former counsel on a concurrently pending and identical patent matter is a significant concern.

Kodak argues that it is "entitled to examine [the petitioner's] relationship with the 074 Patent inventors and this topic may lead to non-privileged, factual information relevant to

Kodak's defenses." Resp't Opp'n Mot. Quash, ECF No. 5, at 12. This is exactly the type of fishing expedition that courts have attempted to prevent when seeking to deter deposition of counsel. Kodak does not state what information it seeks to elicit from the petitioner, what benefit that information would provide, or the defenses (other than the proposed inequitable conduct defense) for which it seeks information. While Federal Rule of Civil Procedure 30 does not explicitly prohibit deposition of an opposing party's counsel, attorneys are not typical fact-witnesses. Attorneys are under strict obligations to their client to preserve confidential information, protect their clients' interests, and prevent disclosure of privileged attorney-client communications or other information obtained during the representation that could harm the client. Deposing an opposing party's former counsel on the same matter at issue in the pending litigation, should not be done lightly. Simply claiming that an opposing party's former counsel has "non-privileged, factual information" without specifying precisely what information is sought or the benefit of that information is insufficient to overcome the potential risks that the Federal Rules were intended to protect against. *See* FED. R. CIV. P. 26(b)(2)(C)(iii) (requiring the Court to limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit"); FED. R. CIV. P. 45(c)(3)(A)(iii-iv) (requiring Court to quash a subpoena when it would require disclosure of privileged or other protected matters, or would subject a person to an undue burden).

3. *Kodak May Obtain the Information It Seeks From Other More Appropriate and Convenient Sources*

Kodak seeks information regarding the USPTO reexamination proceedings. There are other more appropriate sources for that information rather than deposition of the petitioner. The reexamination of the 074 patent "was done on the written record," which includes a written summary of Apple's in-person interview conducted with the USPTO. Pet'r Mot. Quash, ECF

17

No. 1, at 4; *see also* 37 C.F.R. § 1.2 ("All business with the [USPTO] should be transacted in writing. . . . The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt."). If Kodak seeks more information regarding the interview, instead of deposing the petitioner, Kodak may depose the patent examiner in addition to the inventor, whom Kodak has already deposed and was present at the reexamination interview. *See* FED. R. CIV. P. 26(b)(2)(C)(i) (requiring Court to limit discovery when there is "some other source that is more convenient, less burdensome, or less expensive"). If deposed, much of the information sought from the petitioner, such as "client communications, internal communications, and mental impressions," would likely be protected from disclosure by attorney-client privilege or the work-product doctrine. Pet'r Mot. Quash, ECF No. 1, at 4; *see also* FED. R. CIV. P. 30(c)(2) (authorizing a deponent to object or not to answer a deposition question in order to preserve privilege). Clearly a deposition of the petitioner would require diligent efforts to avoid disclosure of attorney-client communications and protected work-product material, a painstaking process that poses risks that other sources of discovery do not. *See* FED. R. CIV. P. 45(c)(3)(A)(iii-iv) (requiring Court to quash a subpoena when it would require disclosure of privileged or other protected matters, or would subject a person to an undue burden).

Kodak contends that it should be allowed to depose the petitioner regarding the "scope of the 074 patent" and the patent's prosecution history. Resp't Opp'n Mot. Quash, ECF No. 5, at 11. Yet, Kodak has already deposed the inventor of the patent, who can speak directly on that topic. In *ResQNet.com, Inc. v. Lansa, Inc.*, No. 01-cv-3578, 2004 WL 1627170 (S.D.N.Y. July 21, 2004), the court not only denied deposition of the plaintiff's counsel because the defendant had not pled an inequitable conduct defense, but also rejected the defendant's attempt to depose

opposing party's counsel regarding the disputed patents' prosecution history and scope. The defendant in that case had "already deposed the inventors of the patents alleged to be relevant, and those depositions included detailed questions about the patent prosecution histories, the cited prior art, the patents in suit, and numerous related issues." *Id.* at *5. Additionally, "the prosecution histories speak for themselves, and the relevant inquiry in terms of prior art and claim construction is how one of ordinary skill in the art would interpret and understand those prosecution histories, not what [plaintiff's] litigation counsel thinks about them." *Id.* The situation in this case is analogous, and the Court is not persuaded that the opposing party's former counsel should be deposed regarding this information when the information can be obtained elsewhere.

IV.    **CONCLUSION**

For the reasons discussed above, the petitioner's motion to quash the respondent's subpoena is granted. Kodak's May 11, 2011 deposition subpoena to the petitioner is hereby quashed. An Order consistent with this Memorandum Opinion will be entered.


**DATED: AUGUST 12, 2011**                              /s/ *Beryl A. Howell*
                                                        BERYL A. HOWELL
                                                        United States District Judge